EXHIBIT A

WENDELL H. FORD
KENTUCKY

COMMITTEES:
COMMERCE, SCIENCE AND TRANSPORTATION
ENERGY AND NATURAL RESOURCES
RULES AND ADMINISTRATION

# United States Senate

WASHINGTON, DC 20510–1701

April 23, 1998

Dear Mr. Troutman:

Thank you for contacting my office concerning the legislative intent behind my legislation, S. 794, The Kentucky Land Grantors Relief Act of 1993. I welcome this opportunity to clarify the history and purpose behind this legislation.

As you know, in February 1942, the Federal government began condemnation proceedings to acquire more than 35,000 acres of land in Kentucky. Secretary of War Henry L. Stinson filed Declarations of Taking, for the purpose of developing a "temporary camp for military purposes during the period of national emergency." Fifteen hundred families in Henderson, Union, and Webster Counties, Kentucky were affected by the Declarations. Their land would become Camp Breckinridge.

Orders to vacate were issued in February, March, June and October of 1942. In some cases, as few as six days notice to vacate was provided. Standard contracts were offered, based on appraisals which treated the underlying oil, gas, and mineral rights to be of "nuisance value only."

Beyond simple patriotism during the uncertain early weeks of our involvement in World War II, there were other compelling reasons for land owners to enter into these contracts. First, representations were made by Federal officials that those accepting the appraised value would receive prompt payment. These promises were simply not kept.

Second, and more important, were representations made based on the provisions of the Surplus Property Acts of 1939 and 1944. These laws were designed for such wartime exercises of eminent domain powers. They provided a third priority repurchase right (after Federal agencies and state and local governments) for owners of condemned property once such property was declared "surplus" by the Federal government. Representations were made by Federal officials that the land owners would be allowed to repurchase their property as soon as the war was over. In many cases, Federal officials represented that the land owners would have a first priority under Federal law. These representations included the suggestion that the repurchase price would be the same as the selling price, providing further incentive to accept the artificially low appraised values.

The Surplus Property Acts were each enacted for five year periods, unless renewed by Congress. In 1949, the Surplus Property Act of 1944 was allowed to expire.

Camp Breckinridge was used during World War II from September 15, 1942 until February 1946 as a military training camp. In February, 1946 it was placed on inactive status, but was not declared surplus. Condemnation suits resulting from the 1942 Declarations were not entirely resolved until January 24, 1947. On January 31, 1947, farmers were notified of options to lease their farmland, and some leasing activity occurred. This reaffirmed the widespread belief among the land grantors that they would ultimately be allowed to repurchase their land.

Late in 1950, Camp Breckinridge was reactivated, where it again served as a military training camp during the Korean conflict. This lasted until December 31, 1953, when it was again placed on the inactive list, but continued to be used as a weekend training facility for reserve units.

On December 2, 1962, Camp Breckinridge was finally declared "surplus" by the Federal government. This was more than 13 years after the Surplus Property Act had expired and more than 8 years after any claims for repurchase rights on "surplus" property had expired. In late 1964 and early 1965, the Federal government began to advertise for sale the mineral rights to this property.

Representations made during the early hectic days of World War II were an integral part of the process of acquiring land for Camp Breckinridge. It is clear that these transactions would never have occurred if the other party had not been the Federal government during wartime.

I wrote and sponsored legislation in the United States Senate which was intended to allow a group of individuals the opportunity to have their day in court. There has been a great deal of speculation as to the scope of this legislation. I can assure you that the intent behind my legislation was to include a class of individuals (and in any case in which any such class member is deceased, the heirs of such member) who were the former owners of properties located in Henderson, Union and Webster Counties, Kentucky which were condemned or otherwise procured by the United States Government in order to provide the approximately 36,000 acres necessary for the military training camp known as Camp Breckinridge. To be quite clear, my legislation was never intended to be limited to only those individuals who negotiated sales with the Federal government.

Mr. J. Gregory Troutman
April 23, 1998
Page Three

As the author and sponsor of this legislation, I hope that I have been able to dispel the confusion surrounding the scope of my legislation. Thank you for your interest in this matter.

Best wishes.

Sincerely,

Mr. J. Gregory Troutman
One Riverfront Plaza, Ste. 1000
Louisville, Kentucky 40202-2959