**Transcripts cited to support finding "many of the landowners entered into Contracts with . . . apparent understanding that they could repurchase their properties after World War II was concluded" Land Grantors I, n.35**

| | Exhibit | Deponent | Statement About Repurchase Rights | Tract |
|---|---|---|---|---|
| 1 | CX-270 | John E. Johnson | Mr. Johnson testified that he overheard a conversation between some unnamed "government representative" and his father in 1941 (when Mr. Johnson was ten years old). According to Mr. Johnson, the government representative stated "Just think, after the war is over with, you'll be able to buy this at a fraction of the cost of what the government is paying you." CX-270 at 11. Mr. Johnson, therefore, apparently confused the landowners' right to repurchase their movable properties for a fraction of the cost with the idea that the landowners had the right to repurchase their land after the war. DX-616 to DX-646 show that the U.S. Attorney told these landowners' attorney at the time of acquisition that the United States would be acquiring the full fee simple title. Also, these landowners did not save the money they received from the government in the hopes of repurchasing their property in the future, CX-270 at 58:7-11, and they never attempted to repurchase the land or wrote a letter of complaint, id. at 91:7 to 92:8. | E-167; E-714 |
| 2 | CX-271 | Peyton Heady | Mr. Heady testified that an unnamed government agent, who was involved in surveying work at Camp Breckinridge, told him, at some point between 1943 and 1947, that the landowners would get their land back at the end of the war. CX-271 at 70. The statement was possibly made after passage of the 1944 Act, with respect to a planned expansion of Camp Breckinridge (which never occurred). | None. Mr. Heady is not a claimant in this action, and is not an heir of a former landowner. |
| 3 | CX-272 | William Logan Newman | Mr. Newman testified he had no recollection of any conversation between his father and any government agent, CX-272 at 7:2-6, and his understanding of an alleged repurchase promise was based on multiple levels of hearsay. See id. at 9:4-17; 35:11-16 (stating that his "impression" that he would have a repurchase right was based on "hearsay"). The Hearing Officer's statement that Mr. Newman testified "a Mr. Meyers from Ohio told his father," Land Grantors I, 64 Fed. Cl. at 700 n.35, that he could repurchase his property is incorrect. Mr. Johnson stated that his father told him that he was "supposed to get it back when they got through training the soldier there," he also stated "I don't imagine Meyers could have told him that." CX-272 at 9:6-9. Mr. Johnson had no idea who might have told his father about a repurchase right. See id. at 9:10-11. Mr. Newman had never seen any of the documents that his father might have signed. See id. at 22:20-23. Mr. Newman took no steps to repurchase this property and never complained to anyone about the supposed breach of a repurchase promise prior to his deposition. See id. at 33:3-13. | E-14 and E-28 |

**Transcripts cited to support finding "many of the landowners entered into Contracts with . . . apparent understanding that they could repurchase their properties after World War II was concluded" Land Grantors I, n.35**

| | Exhibit | Deponent | Statement About Repurchase Rights | Tract |
|---|---|---|---|---|
| 4 | CX-273 | Lottie Lynn | Did not know the name of any government agent with whom she may have communicated. CX-273 at 10:17-18. | E-647 (Purchased Tract) |
| 5 | CX-274 | William B. Caton | In response to leading question "Did they tell you anything about buying your property back after the war?", responded "Well, that's all they talked about." CX-274 at 74:3-10. Mr. Caton took no steps to repurchase this property and never complained to anyone about the supposed breach of a repurchase promise prior to his deposition. See id. at 33:6-13; 75:17 to 76:15. | E-225 |
| 6 | CX-275 | Mary Virginia Dixon | Ms. Dixon testified that she was repeating only what her husband had allegedly been told by some unnamed government agent. CX-275 at 14:14-18. Ms. Dixon stated that it was her belief that she could repurchase the property at the end of the war for "ten percent of what they gave us for it and we could reserve the coal and oil rights." Id. at 14:14-18. Ms. Dixon, then, was apparently confusing the right to repurchase movable properties for ten percent of their value with a right to repurchase the land at the end of the war. Ms. Dixon did not know the name of any government agent with whom she may have communicated. Id. at 31:6-8; 52:4-6. Ms. Dixon took no steps to repurchase this property and never complained to anyone about the supposed breach of a repurchase promise prior to her deposition. Id. at 44:21 to 45:10. | E-340 |
| 7 | CX-276 | Kathryn Pullum | Ms. Pullum testified the negotiations were between the government agent and her husband that took place "[o]utside the home," which she did not attend. CX-276 at 26:8-15. Ms. Pullum's testimony was apparently based on an audiotape her husband made in the 1960s. Id. at 36:23-22. Ms. Pullum took no steps to repurchase this property and never complained to anyone about the supposed breach of a repurchase promise prior to her deposition. Id. at 54:23 to 55:4. | E-695 |
| 8 | None | Eulah P. Tilley | After being asked leading question about repurchase rights -- "Where you ever told anything by anybody on behalf of the government about the possibility of ever getting your property back?" -- Ms. Tilley stated "It was always understood we'd get it back when the war was over." Transcript at 34:15-18. In a later response, Ms. Tilley stated "Well, it was first in the contract, wasn't it? Didn't they vote that over, after the Camp was on standby basis, that the original owners had no right to the first priority? Isn't it?" Id. 35:1-4. Ms. Tilley did not know the name of any government agent with whom she may have communicated. Id. 72:10-15. Ms. Tilley took no steps to repurchase this property and never complained to anyone about the supposed breach of a repurchase promise prior to her deposition. Id. 142:18 to 143:4. | E-223 |

**Transcripts cited to support finding "many of the landowners entered into Contracts with . . . apparent understanding that they could repurchase their properties after World War II was concluded" Land Grantors I, n.35**

| | Exhibit | Deponent | Statement About Repurchase Rights | Tract |
|---|---|---|---|---|
| 9 | CX-263 | Herbert Hoffman | Mr. Hoffman testified that he while he was working in a government office for eight days in 1941 (approximately sixty-three years before his deposition), he partially overheard statements about repurchase rights between some unknown government agent and unknown former landowners. CX-263 at 8:19 to 9:2; 61:14-23. Mr. Hoffman believed, wrongly, that the government paid a flat $100 per acre for all the Breckinridge properties. Id. at 69:17-20. | none. Mr. Hoffman is not a claimant in this matter. |
| 10 | CX-268 | Carl Culver | Mr. Culver testified about a conversation his aunt and great-aunt had had with an unnamed government agent in the . CX-268 at 14:13-24. Mr. Culver was not present during the conversation, and he acknowledged that his aunts did not tell him everything about the government agent's visit. Id. at 77:2-19. | E-627 and E-633 |
| 11 | CX-269 | Robert Bruce | Mr. Bruce testified that while he was working in the Camp Breckinridge area, he overheard unnamed people stating that "they hoped to get a better understanding, some guarantee that when the government no longer needed their land for an Army camp that they would have the privilege of repurchasing at the price equal to what they received." CX-269 at 11:17-21. Mr. Bruce could not name any of the former landowners who might have heard such a promise, and he stated that he had no idea how any of the former owners "came to understand that they had a repurchase right." Id. at 81:4-8. | A-31 and E-203 |

**Attachment E to United States' Opening Brief**